IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MINDY LANCE QUINN, and JANICE YOAK, individually and as representatives of a class of persons who are similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MORGAN STANLEY, ALLSTATE INSURANCE, NATIONWIDE INSURANCE, JOHN DOE COMPANIES 1-50, and LESLIE ADAMS, an individual,<br><br>Defendants. | ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART DEFENDANT ALLSTATE INSURANCE'S MOTION FOR SUMMARY JUDGMENT<br><br><br>Case No. 2:05-CV-180 PGC |

In this removal action, plaintiffs Mindy Lance Quinn and Janice Yoak (collectively the Beneficiaries) allege that defendants Nationwide Insurance, Morgan Stanley, Leslie Adams, and Allstate Insurance improperly failed to pay death benefits due to them under annuity contracts purchased through Morgan Stanley and issued by Nationwide and Allstate. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Beneficiaries move for partial summary judgment on their breach of contract claims against all defendants. Because the Beneficiaries have failed to

present evidence showing that they are entitled to judgment as a matter of law on their contract claims, the court denies the Beneficiaries' motion for partial summary judgment.

Defendant Allstate cross-moves for summary judgment on the contract claims and all remaining claims, which it summarily alleges are dependent upon the contract claims. Allstate has established that it is entitled to summary judgment on Yoak's contract claim but material issues of fact preclude summary judgment on Quinn's contract claim. Allstate has failed to establish that the remaining claims are dependent on the contract claims. Accordingly, Allstate's motion for summary judgment is granted in part and denied in part.

## BACKGROUND

When considering a motion for summary judgment, the court views the evidence, and draws inferences therefrom, in the light most favorable to the nonmoving party.[1] In regard to Allstate's cross-motion for summary judgment, the court "'construe[s] all inferences in favor of [the Beneficiaries,] the part[ies] against whom the motion under consideration is made.'"[2] Viewed in this light, the record reflects the following facts. Pat Shropshire (the Annuitant) opened a brokerage account with Morgan Stanley through which two annuities – one issued by Nationwide and one issued by Allstate – were purchased. The Beneficiaries were named as beneficiaries of the two annuities.

On February 1, 2002, the Annuitant died. Defendants received proof of death or were

---

[1] *Green v. New Mexico*, 420 F.3d 1189, 1192 (10th Cir. 2005).
[2] *Pirkheim v. First Unum Life Insur.*, 229 F.3d 1008, 1010 (10th Cir. 2000) (quoting *Anderson v. Chrysler Corp.*, 99 F.3d 846, 856 (7th Cir. 1996)).

otherwise notified that the Annuitant died. Neither of the Beneficiaries provided Nationwide or Allstate with an election to defer benefits. However, Allstate sent the Beneficiaries election forms, the completion of which Allstate asserts is a condition precedent to payment of benefits. It is undisputed that the Beneficiaries did not complete or return election forms to Allstate. However, in letter to Morgan Stanley dated February 24, 2003, Quinn requested information about, *inter alia*, benefits to which she was entitled and demanded final payment. Morgan Stanley responded that Quinn needed to contact the executor of the Annuitant's estate.

      The Beneficiaries maintain that under the annuity contracts or prospectuses issued by Nationwide and Allstate, they were entitled to receive death benefits within 61 days after Nationwide received proof of the Annuitant's death or within 181 days after Allstate received proof of the Annuitant's death. Because the Beneficiaries did not receive benefits within those time frames, they filed this action against Nationwide, Morgan Stanley, Adams, and Allstate. After the Beneficiaries filed this action, Nationwide sent them checks that allegedly included the benefits to which they were entitled plus interest.

      In their Amended Complaint, the Beneficiaries asserted six causes of action: breach of contract, breach of implied covenant of good faith and fair dealing, conversion, breach of fiduciary duty, civil conspiracy, and RICO. This court granted the defendants' motion to dismiss the RICO claims but denied the defendants' motion to dismiss the civil conspiracy claims. The Beneficiaries now move for partial summary judgment, seeking judgment only on their contract

claims. Allstate cross-moves for dismissal of or summary judgment on the Beneficiaries' contract and remaining claims, which it alleges are dependent on the contract claims.

## DISCUSSION

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[3] The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[4] The movant must identify those portions of the record that demonstrate that there is no genuine issue of material fact.[5] Only after the movant meets this initial burden is the nonmovant required to respond by presenting evidence creating an issue of material fact.[6] Because this is a removal action, Utah law governs substantive issues. Under Utah law, the elements of a prima facie case for breach of contract are: "(1) a contract; (2) performance by the party seeking recovery; (3) breach of the contract by the other party; and (4) damages."[7]

    I.    **The Beneficiaries' Motion for Summary Judgment**

        A.    **Claims Against Nationwide.**

Relying solely on a Nationwide prospectus dated May 1, 2005, the Beneficiaries contend

---

[3] Fed. R. Civ. P. 56(c).
[4] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).
[5] *See Celotex*, 477 U.S. at 323; *see also* D.U. Civ. R. 56-1(b).
[6] *See Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002).
[7] *Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 392 (Utah 2001).

that they are entitled to summary judgment on their contract claim against Nationwide. The Beneficiaries, however, allege that Nationwide breached the contract in 2002, or at the latest, 2003. Because the Beneficiaries have not offered any evidence of the contract that they assert was breached in 2002, or at the latest, 2003, they have not even met their initial burden to establish a prima facie case required for summary judgment as a matter of law as to Nationwide.

The Beneficiaries complain that Nationwide refused Quinn's request for the contract in her February 24, 2003 letter. However, that letter was directed to Morgan Stanley, not to Nationwide. Moreover, the Beneficiaries have not sufficiently explained why they failed to compel Nationwide to produce a copy through a discovery motion.

The Beneficiaries contend that Nationwide's sending death benefit checks after this action was filed constitutes an admission that Nationwide breached a contract. The court disagrees. In his declaration, Daniel Zavorek, a Process Management Specialist with Nationwide, reports that Morgan Stanley instructed Nationwide to defer payment of death benefits and that Nationwide received no indication that the Beneficiaries were seeking payment until the Beneficiaries commenced this lawsuit. Thus, even if the Beneficiaries had made a prima facie case, the declaration creates issues of material fact as to whether Nationwide breached, the date any breach occurred, and accordingly the amount of damages if any to which the Beneficiaries are entitled.

The Beneficiaries' true complaint in regard to Nationwide appears to be that it may not have paid them "peak amounts" and interest they claim they are entitled to and may have improperly charged them fees. The court is confident that the parties can rapidly settle this

comparatively minor issue.

### B. Claims Against Morgan Stanley and Adams

The Beneficiaries contend that Morgan Stanley and Adams are liable for breach of contract as the agents of Nationwide and Allstate. The Beneficiaries have presented no evidence of any contract with Morgan Stanley or Adams or of any breach by them. Moreover, in general, agents cannot be held liable for the contractual breaches of their principals.[8] Accordingly, the Beneficiaries' motion for summary is denied as to Morgan Stanley and Adams.

### II. Allstate's Motion for Summary Judgment

As a threshold matter, Allstate has cross-moved to dismiss the Beneficiaries' contract claims under Rule 12(b)(6) and 9(b) or alternatively for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure. The court is satisfied that the Beneficiaries sufficiently pleaded their breach of contract claims. Additionally, because the court is considering materials outside the Amended Complaint, the court will treat the motion to dismiss as a motion for summary judgment.[9]

The parties agree that the Allstate Variable Annuity II with Enhanced Death Benefit Rider (Allstate Annuity Contract) is controlling. They disagree, however, on its interpretation.

In relevant part, the Allstate Annuity Contract provides:

> The death benefit is payable to the beneficiary if the sole surviving owner dies during the accumulation phase, subject to any prior

---

[8] *See Roberts v. Tuttle*, 36 Utah 614, 105 P. 916, 923 (1909).
[9] *See Lamb v. Rizzo*, 391 F.3d 1133, 1137 (10th Cir. 2004) (noting that when court relied upon documents outside the four corners of complaint, court converted motion to dismiss to motion for summary judgment).

claims.  *Details . . . are stated in the section titled Accumulation Phase.*[10]

The Accumulation Phase section provides:

> If you die prior to the payout start date, the new owner will be the surviving owner(s).  If there is (are) no surviving owner(s), the new owner will be the beneficiary(s).  The new owner will have the options described in the Options of the New Owner subsection below.[11]

The Options of the New Owner subsection, in turn, provides:

> If the new owner is not your spouse, then this new owner has the following options:
>
>> The new owner may elect, within 60 days of the date of your death, to receive the death benefit described below.
>>
>> The new owner may elect, within 60 days of the date of your death, to receive the settlement value payable in a lump sum within 5 years of your date of death.
>>
>> The new owner may elect, within one year of the date of your death, to receive the settlement value paid out under one of the income plans described in the Payout Phase section.  The payout start date must be within one year of your date of death.  Income payments must be over the life of the new owner or over a period not to exceed the life expectancy of the new owner.
>>
>> *If the new owner does not make one of the above described elections*, the settlement value will be paid to the new owner on the mandatory distribution date 5 years after your date of death.

---

[10] Allstate Annuity Contract at 4 (emphasis added).
[11] *Id.* at 9.

> Under any of these options, all ownership rights are available to the new owner from the date of your death to the date on which the death benefit or settlement value is paid.[12]

Allstate argues that the annuity contract provides "new owners" (such as beneficiaries) with election options. Allstate further argues that any "new owner" must select an option before it has an obligation to perform. Allstate concludes that because the Beneficiaries did not select an option within the terms specified above, the last option applies by default, and its duty to perform does not arise until February 1, 2007–five years after the Annuitant died.

The Beneficiaries interpret the Allstate Annuity Contract differently. They contend that the options are electives, not requirements. The Beneficiaries emphasize that the contract provides that "[t]he death benefit *is payable to* the beneficiary if the sole surviving owner dies during the accumulation phase, subject to any prior claims."[13] The Beneficiaries then rely upon the "death benefit" subsections of the annuity contract, which provide:

> The death benefit is the greater of:
>
>> the sum of all purchase payments, less any withdrawals, applicable early withdrawal charges and premium tax; or
>>
>> the accumulation value on the date we receive due proof of death; or
>>
>> the accumulation value on the most recent death benefit anniversary, less any withdrawals, applicable early withdrawal charges and premium tax deducted from the accumulation value since that anniversary.
>
> . . . .

---

[12] *Id.* at 9 (emphasis added).
[13] *Id.* at 4 (emphasis added).

> *We will calculate the value of the death benefit at the end of the valuation period coinciding with our receipt of a complete request for payment of the death benefit. A complete request includes due proof of death.*
>
> The settlement value is the accumulation value less any applicable early withdrawal charges and premium tax. We will calculate the settlement value at the end of the valuation period coinciding with the receipt of a request for payment or on the mandatory distribution date of 5 years after the date of death.[14]

The Beneficiaries contend that the death benefit subsections provide beneficiaries who may or may not be "new owners" with rights to receive the death benefit with a reasonable time or at least within 180 days[15] after Allstate receives a "complete request for payment." The Beneficiaries further contend that appropriate proof of death is all that is required for a "complete request for payment."

Allstate responds that the death benefit subsections provide formulas for calculating the amounts due beneficiaries. Allstate further responds that a "complete request for payment" includes not only proof of death but also an election form.

Both the annuity contract and the Allstate prospectus require a "complete request for payment."[16] However, neither the annuity contract nor the prospectus define "complete request for payment." The contract and the prospectus provide that a "complete request" "include[s] due proof of death."[17] However, neither provide that due proof of death alone is a "complete request for payment."

---

[14] *Id.* at 9-10 (emphasis added).
[15] *See id.* at 12-13.
[16] *See id.* at 10; Allstate Prospectus Dated April 30, 2005 at 28.
[17] Allstate Annuity Contract at 10; Allstate Prospectus Dated April 30, 2005 at 27.

The court is satisfied that proof of death alone is not a "complete request for payment." The contract itself indicates the request "includes" proof of death, implying that other materials must be submitted. Moreover, were proof of death alone sufficient to trigger payment obligations, Allstate could simply elect whichever payment option was most beneficial to it. This is contrary to the structure of the contract, which gives the beneficiary the right to make various elections and a request for payment.

There is nothing in the record that shows that Yoak made any election or any type of request for payment from Allstate. Thus, even adopting the interpretation of the contract urged by the Beneficiaries, because there is no evidence that Yoak performed; accordingly, the court cannot conclude that Allstate breached the contract as to Yoak. As to Yoak, then, the court denies the Beneficiaries' motion for summary judgment and grants Allstate's motion for summary judgment.

With respect to Quinn, in her February 24, 2003 letter addressed to Morgan Stanley, Quinn made a final demand for payment. Quinn asserts that Morgan Stanley was Allstate's agent. The Allstate Annuity Contract provides, "if you have any questions contact your agent or broker" and lists Adams as representative.[18] Thus, there appear to be issues of material fact as to whether Quinn's February 24, 2003, letter was a complete request for payment, as to whether Morgan Stanley was Allstate's agent, and therefore as to whether Allstate breached the contract by not honoring the letter sent to Morgan Stanley if it was Allstate's agent. The Allstate Annuity Contract provides that "all ownership rights are available to the new owner from the date of your

---

[18] Allstate Annuity Contract at GLB1.

death to the date on which the death benefit or settlement value is paid."[19]  The annuity contract also provides owners with withdrawal rights.[20]  Therefore, at a minimum, there are issues of material fact as to whether the letter is an exercise of ownership rights under the Allstate annuity contract and again as to whether Morgan Stanley was Allstate's agent.  Therefore, material issues of fact preclude summary judgment as to Quinn.

Finally, Allstate tersely and summarily asserts that it is entitled to summary judgment on all of the Beneficiaries remaining claims as they are dependent on the contract claims.  As to Quinn, of course, this argument fails, as the contract claim remains alive.  As to Yoak, however, the argument is plausible.  In addition to the contract claims, the Beneficiaries have filed seemingly related claims for breach of covenant of good faith and fair dealing, conversion, breach of fiduciary duty, and civil conspiracy claims.  Without briefing, however, showing that these claims by Yoak are truly dependent on the now-dismissed contract claim, the court cannot grant summary judgment to Allstate at this time.  The Utah Supreme Court, for example, has held that breach of contract and breach of the covenant of good faith and fair dealing are based upon separate duties.[21]  Accordingly, the court denies Allstate's summary request for summary judgment on Yoak's remaining claims, without prejudice to the filing of another pleading (before the dispositive motion deadline passes) which fully briefs the issues.

## CONCLUSION

Based upon the foregoing, the Beneficiaries' motion for partial summary judgment on

---

[19]*Id.* at 9.
[20]*See id.* at 8.
[21]*See Christiansen v. Farmers Insur. Exch.*, 116 P.3d 259, 261-62 (Utah 2005).

their contract claims [#56] against all defendants is DENIED.  Allstate's Motion to Dismiss the contract claims [#18] is DENIED.  Allstate's Motion for Summary Judgment on the contract claims [#62] is GRANTED as to Yoak and is DENIED as to Quinn.  At this time, Allstate's Motion for Summary Judgment [#62] is DENIED on all remaining claims

        DATED this 15th day of November, 2005.

        BY THE COURT:

        _____
        Paul G. Cassell
        United States District Judge