IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MINDY LANCE QUINN and JANICE YOAK,<br><br>　　Plaintiffs,<br><br><br><br><br><br><br><br><br><br><br><br>　　　　　vs.<br><br><br>MORGAN STANLEY, ALLSTATE INSURANCE, NATIONWIDE INSURANCE, JOHN DOE COMPANIES 1-50, and LESLIE ADAMS,<br><br>　　Defendants. | ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, MOTION TO ALTER CLASS CERTIFICATION ORDER, RENEWED MOTION FOR LEAVE TO AMEND COMPLAINT, AND THIRD MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT NATIONWIDE'S MOTION FOR SUMMARY JUDGMENT AND TO STRIKE PLAINTIFFS' EXPERT DESIGNATION AND REPORTS<br><br><br><br>Case No. 2:05-CV-00180 PGC |

In this removal action, plaintiffs Mindy Lance Quinn and Janice Yoak (collectively the Beneficiaries) allege that defendant Nationwide Insurance failed to pay death benefits due to them under a variable annuity contract purchased through Morgan Stanley and issued by Nationwide.  The Beneficiaries assert breach of contract, breach of covenant of good faith and

fair dealing, breach of fiduciary duty, conversion, and conspiracy claims against Nationwide.  In a May 16, 2006 order, this court denied the Beneficiaries' initial request for class certification of these claims.  Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Beneficiaries now move for partial summary judgment on their breach of contract claim, asserting that they satisfied conditions precedent to payment but Nationwide failed to timely pay benefits due to them under the contract.  Nationwide opposes the Beneficiaries' motion and cross-moves for summary judgment on all of the Beneficiaries' claims.  Nationwide also moves to strike the Beneficiaries' Expert Designations and Reports as untimely.  After considering the parties' written and oral arguments, the court concludes that Nationwide did not breach the contract, the Beneficiaries failed to timely file an expert report, and the Beneficiaries cannot prove damages. The court therefore denies the Beneficiaries' motion for partial summary judgment and grants Nationwide's motion for summary judgment and motion to strike.

After the summary judgment motions were filed, the Beneficiaries filed a motion to alter the court's order denying class certification.  The motion to alter is largely premised on the Beneficiaries' contract interpretation supporting their position that they satisfied conditions precedent.  The court has rejected the Beneficiaries' interpretation.  Additionally, the court is satisfied that its prior order denying certification is correct.  The court therefore denies the motion.

After the summary judgment motion hearing, the Beneficiaries filed a motion to amend the Amended Complaint, seeking to add Carol-Ann Fuller as a representative plaintiff.  The Beneficiaries' counsel also filed another motion for partial summary judgment (the Third Motion for Summary Judgment), seeking judgment on Ms. Fuller's claims as well.  The motion to

amend is futile and untimely.  Accordingly, the motion to amend is denied.  Consequently, the

Third Motion for Summary Judgment is denied.

## BACKGROUND

When considering a motion for summary judgment, the court views the evidence, and

draws inferences therefrom, in the light most favorable to the nonmoving party.[1]  In regard to

Nationwide's cross-motion for summary judgment, the court "'construe[s] all inferences in favor

of [the Beneficiaries,] the part[ies] against whom the motion under consideration is made.'"[2]

Viewed in this light, the record reflects the following facts.

On September 7, 2001, Pat Shropshire through defendant Leslie Adams, a Morgan

Stanley broker, purchased variable annuities from defendants Nationwide and Allstate.  Upon the

parties' stipulation, the court dismissed the claims against Allstate, Morgan Stanley, and Ms.

Adams, leaving Nationwide as the sole defendant in this action.

Ms. Shropshire, the variable annuity contract owner and annuitant, designated the

Beneficiaries, along with four other individuals, as contract beneficiaries in the event that she

died before the annuitization date.  In her contract application, Ms. Shropshire provided

allocation percentages and the contract beneficiaries' names, birth dates, and social security

numbers.  Morgan Stanley had an Allstate change of beneficiary form that listed the contract

beneficiaries' personal information, including addresses.

The Nationwide variable annuity contract contained provisions governing the receipt of

benefits if Ms. Shropshire died, including requirements for valuing the death benefits, acceptable

forms of proof of death, acceptable distribution methods, and timing of payment.  The contract

---

[1] *See Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2000).

[2] *Id.* (quoting *Anderson v. Chrysler Corp.*, 99 F.3d 846, 856 (7th Cir. 1996)).

also contained an enhanced death benefit rider that provided the method for valuing the death benefits.  The court lists these provisions below.  According to Nationwide, the contract deemed that the Beneficiaries elected cash payment, but that they had a number of distribution options including elections to defer their cash payment until the fifth anniversary of Ms. Shropshire's death; to take annual cash distributions until the fifth anniversary; to take an immediate lump sum distribution; and to take according to other schedules so long as their portion was distributed in cash and in full by the fifth anniversary as required by federal law.

On February 1, 2002, Ms. Shropshire died.  That same day, Morgan Stanley and Nationwide entered into a written agency agreement that provides that Morgan Stanley is Nationwide's general agent in the sale of variable annuity contracts and that the parties have duties to cooperate in the investigation of customer complaints.  The agreement further provides that Morgan Stanley has no authority to adjust or settle any claim, subject to exceptions inapplicable here.

On June 10, 2002, Nationwide received Ms. Shropshire's death certificate and a notice of election specifying a method of distribution on behalf of one of the contract beneficiaries, Mark Ferrin.  Mr. Ferrin elected his allocation in a full lump sum and in cash.  On June 11, 2002, Nationwide paid Mr. Ferrin his benefit share based upon Nationwide's interpretation of the rider.  According to Nationwide, Mr. Ferrin's claim triggered the valuation of benefits for all of the contract beneficiaries.

On June 27, 2002, Morgan Stanley forwarded to Nationwide a death benefit claim on behalf of a second beneficiary, Carol-Ann Fuller.  Ms. Fuller also elected to have her allocation distributed as a lump sum.  Nationwide processed Ms. Fuller's claim on June 28, 2002.

In a letter dated February 24, 2003, and directed to Morgan Stanley, Ms. Quinn requested information about the benefits she was entitled to, specifically referencing the Nationwide Best of America contract number, and demanded payment.  Morgan Stanley responded that the Shropshire estate executor was initiating all requests for distribution and that Ms. Quinn should contact the executor (Ms. Fuller) regarding any proceeds.

On or about March 3, 2003, Nationwide received a death benefit election on behalf of the contract beneficiaries.  The Beneficiaries had signed a Nationwide election form.  Ms. Quinn's signature is dated June 1, 2002; Ms. Yoak's signature is dated June 4, 2002.  The Beneficiaries apparently sent the form to the executor (Ms. Fuller), who sent the form to Morgan Stanley.  Morgan Stanley then faxed the form to Nationwide.  The form indicates that Nationwide faxed it to Morgan Stanley in May 2002 (before any beneficiary claims were processed) and that Morgan Stanley faxed it back to Nationwide on March 3, 2003.  Nationwide had already paid Mr. Ferrin's and Ms. Fuller's claims in June 2002.  The sixth beneficiary, Nancy Elizabeth Schmidt, did not sign the form.

On or about March 10, 2003, Morgan Stanley, through Ms. Adams, contacted Nationwide about the other three contract beneficiaries' claims, including the claims of the Beneficiaries in this action.  Call logs and phone call transcripts indicate Ms. Adams asked why Nationwide had not paid the claims, if Nationwide could back-date the claims to June 2002, why Nationwide had not moved the funds to a money market account, and about how she could file a complaint with Nationwide.  Nationwide asked Ms. Adams if it should move or pay the benefits.  Ms. Adams instructed Nationwide to not move or pay the benefits.  She needed to contact her "individual people" to discuss their options.  Nationwide also provided Ms. Adams with

information about filing a complaint.  The Beneficiaries, however, point to no record evidence

that Ms. Adams filed a complaint.  Nationwide ultimately closed out the issue.  In their

memoranda, however, the Beneficiaries' counsel assert that the Beneficiaries did not give Ms.

Adams, Morgan Stanley, or Nationwide permission to retain, defer, or to keep the death benefits.

And during her deposition, Ms. Adams testified that she did not have authority to defer payment.

Also on or about March 10, 2003, Morgan Stanley forwarded a claim to Nationwide on

behalf of the sixth beneficiary, Ms. Schmidt.  Ms. Schmidt elected to defer payment of her death

benefits for five years following Ms. Shropshire's date of death.  On March 11, 2003,

Nationwide withdrew her allocation and established an individual contract for her.

As of January 31, 2005, the Beneficiaries had not received their benefits.  They therefore

filed this matter as a class action in state court, serving Nationwide on February 1, 2005.  On

March 2, 2005, the defendants removed the matter to this court based upon federal question and

diversity jurisdiction.  On March 24, 2005, the Beneficiaries filed their Amended Complaint.

In their Amended Complaint, the Beneficiaries asserted six causes of action: breach of

contract, breach of implied covenant of good faith and fair dealing, conversion, breach of

fiduciary duty, civil conspiracy, and RICO.  This court dismissed the RICO claims as

inadequately pled.

After the Beneficiaries filed their Amended Complaint, Nationwide processed their

claims.  On March 29, 2005, Nationwide sent the Beneficiaries checks that allegedly included

more benefits and interest than they were entitled to under the contract.  The Beneficiaries

initially returned the checks because they were not accompanied by an accounting.

Subsequently, the court ordered the check to Ms. Quinn to be deposited with the court clerk and the check to Ms.Yoak to be negotiated without prejudice.

Before any significant discovery, the Beneficiaries moved for partial summary judgment on the contract claim.  The court denied the motion because the Beneficiaries had not offered the Nationwide contract.  The court therefore could not determine whether Nationwide had breached its terms.  The court then ordered the Beneficiaries to show cause as to why this matter should be certified as a class action.  Because the Beneficiaries did not meet class certification requirements, the court denied their request for certification.

In late November 2006, the Beneficiaries moved for a third extension of discovery deadlines, seeking for a second time to extend the time to submit their expert reports. Nationwide opposed the motion.  Before the court ruled on the motion, the Beneficiaries submitted an "Expert Designation and Reports" indicating that they intended to call Stephen J. Nicolatus as a damage expert and would do so after receipt of the deposition transcripts and responses to discovery requests.  Nationwide moves to strike the designation because it is improper, untimely, and prejudicial.  The Beneficiaries did not respond to the motion to strike.

The Beneficiaries now again move for partial summary judgment on their contract claim. Nationwide cross-moves for summary judgment on the Beneficiaries' contract and remaining claims.   After the parties filed their summary judgment motions, the Beneficiaries moved to alter this court's order denying class certification.  After oral argument on the summary judgment motions, the Beneficiaries filed a motion to amend their Amended Complaint to add Carol-Ann Fuller as a representative plaintiff and the Third Motion for Summary Judgment.  The

court first considers Nationwide's Motion for Summary Judgment, then considers the

Beneficiaries' Motion for Partial Summary Judgment and the remaining motions.

## DISCUSSION

Summary judgment shall be rendered "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."[3]  "The movant bears the initial burden of making a prima facie demonstration of the

absence of a genuine issue of material fact and entitlement to judgment as a matter of law . . .

and may make [such] demonstration simply by pointing out . . . a lack of evidence . . . on an

essential element" of a claim.[4]  The movant must identify those portions of the record that

demonstrate that there is no genuine issue of material fact.[5]  Only after the movant meets this

initial burden is the nonmovant required to respond by presenting evidence creating an issue of

material fact.[6]

### I.    *Nationwide is Entitled to Summary Judgment on the Breach of Contract Claim.*

Nationwide contends that it is entitled to summary judgment because the Beneficiaries

cannot show that it breached the contract and that the breach caused damage.  Under Utah law,

the elements of a breach of contract claim are: "(1) a contract; (2) performance by the party

---

[3] Fed. R. Civ. P. 56(c).

[4] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[5] *See Celotex*, 477 U.S. at 323; *see also* D.U. Civ. R. 56-1(b).

[6] *See Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002).

seeking recovery; (3) breach of the contract by the other party; and (4) damages."[7]  The court agrees that the Beneficiaries cannot show that Nationwide breached or that any breached caused them damage.  Nationwide therefore is entitled to summary judgment on this claim.

      A.     Nationwide did not Breach the Contract.

      In sum, the contract required the Beneficiaries to satisfy conditions precedent to payment: provision of proof of the annuitant's death and an election to Nationwide.  At issue is whether the Beneficiaries provided a proper election.  Nationwide contends it did not breach contract because it had no duty to pay benefits until it received a written election specifying how the benefits should be paid – for example, as a lump sum or over a period of time.  Nationwide further contends that it did not receive such an election until the Beneficiaries filed their Amended Complaint.  The Beneficiaries respond that the contract does not require a written election.  They maintain that the contract deemed their election within sixty days of Ms. Shropshire's death in February 2002.  And Nationwide received proof of her death on June 10, 2002.  Nationwide was therefore required to pay them benefits within thirty days after it received that proof – July 11, 2002.  Alternatively, the Beneficiaries maintain that at the latest, Nationwide received their election form on March 3, 2003, and therefore Nationwide was required to pay their benefits within thirty days after that receipt – April 3, 2003.   Nationwide, however, maintains that the March 3, 2003 receipt of the election form was not effective because the Beneficiaries' agent, Ms. Adams, deferred payment of the benefits.

      1.     Because Nationwide had not received notice of the Beneficiaries' election, Nationwide did not breach the contract on July 11, 2002.

---

[7] *Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 392 (Utah 2001).

Nationwide first contends that it did not breach on July 11, 2002, because the contract requires a written election of payment method from the Beneficiaries before it can value benefits and therefore pay benefits.  This contention is based upon the contract's plain language:

> The value of the death benefit will be determined as of the Valuation Date coincident with, or next following the date the Company receives *in writing* at the Home Office the following three items: (1) proper proof of the Annuitant's death; (2) an election specifying distribution method; and (3) any applicable state required form(s).[8]

Nationwide does not dispute that requirement one is met.  On June 10, 2002, Nationwide received Ms. Shropshire's death certificate.  Additionally, Utah does not require forms.  Therefore, requirement three is inapplicable.  Nationwide, however, contends the Beneficiaries did not meet requirement two.  Specifically, Nationwide contends that it did not receive a written election from the Beneficiaries until the Beneficiaries filed their Amended Complaint in March 2005.  Thereafter, Nationwide promptly paid the Beneficiaries.

The provision above expressly provides for a written election specifying payment method before Nationwide can even value the death benefits.  However, this provision seems ambiguous as to whether *each* beneficiary must submit the items above before a valuation can take place.  According to Nationwide, Mr. Ferrin's election form it received in June 2002 triggered the valuation date for all contract beneficiaries.  The remaining beneficiaries' benefits therefore are subject to market forces until they make an election.  The Beneficiaries maintain that is unfair.  But, even assuming for the sake of argument that this is so, the Beneficiaries in this case have not shown that Nationwide employed an incorrect valuation date in paying their benefits.  In determining the valuation date, Nationwide assumed that it had received proof of death within

---

[8] Nationwide Life Ins. Variable Annuity Contract at 23 (emphasis added).

sixty days of Ms. Shropshire's death (although it did not) and that the Beneficiaries had made a distribution method election on the last day of the sixty-day-period (although none of the beneficiaries had made an election within that time frame).  In short, the court concludes that Nationwide applied a correct valuation date when it paid the Beneficiaries' claims.

Nationwide next contends that other contract provisions required the Beneficiaries to elect a specific payment distribution *method* before its duty to pay could arise.  The Beneficiaries respond that the contract automatically selects a method if no election is made within sixty days of the annuitant's death – specifically an immediate lump sum payment.

The contract provides:

The Beneficiary must elect a *method* of distribution which complies with the "Distribution Provisions" of this Contract.  The Beneficiary may elect to receive such Death Benefit in the *form* of: (1) a lump sum distribution; (2) an annuity payout; or (3) any distribution that is permitted under state and federal regulations and is acceptable by the Company.  If *such an* election is not received by the Company within 60 days of the Annuitant's death, the Beneficiary will be deemed to have elected a cash payment as of the last day of the 60 day period.

Payment of the death benefit will be made or *will commence* within 30 days after receipt of proof of death and notification of the election.[9]

Additionally, the parties do not dispute that federal law requires the payments to be distributed within five years of death unless an annuity option is elected.

The contract requires a form and a distribution method election.  The Beneficiaries contend that because Nationwide did not receive a distribution method election of an annuity payout or any distribution permitted under state or federal regulations within sixty days of Ms. Shropshire's death, they were deemed to have elected a lump sum, cash payment on the last day of the sixty-day-period, April 2, 2002.  The court disagrees.  First, the contract's plain language

---

[9] *Id.* at 21 (emphasis added).

states that the form of the election will be a "cash payment."  It does not provide whether the cash payment will be distributed in a lump sum or periodic sums.  The court interprets the provision as providing that the Beneficiaries still had the option of selecting a payment distribution method (although they had to take payment in the form of cash).

This interpretation is consistent with other contract provisions.  For example, in providing that payment "will be made or *will commence* within thirty days after receipt of proof of death and notification of the election" the contract anticipates both that payment will be made in full in a lump sum or that periodic payments will commence.

The Beneficiaries contend that the contract does not require a form, only notification. This argument is true as far as it goes.  But even though the contract does not require a written notification, it still requires notification in some form.  The Beneficiaries point to no record evidence showing that Nationwide received notice of how the Beneficiaries wanted payment – at least before March 3, 2003, when Morgan Stanley faxed their election form to Nationwide.

The Beneficiaries maintain that their interpretation is supported by the Nationwide Prospectus 2005, which generally describes the contract as providing that if the recipient of the death benefit does not elect the form in which to receive the death benefit payment, Nationwide will pay the death benefit in a lump sum.  It is unclear to the court how this general, after-the-fact prospectus affects the specific contract at issue.  Practically, such an interpretation would unfairly limit the rights of contract beneficiaries.  The Beneficiaries' interpretation would require an immediate, lump sum, cash distribution thirty days after the deemed election or proof of death date.  But how a beneficiary takes his or her benefits may very well have significant tax and other consequences.  As Nationwide explains, the Beneficiaries had a number of options

including an election to defer their cash payment until the fifth anniversary of Ms. Shropshire's death; to take annual cash distributions until the fifth anniversary; to take an immediate lump sum distribution; and to take according to any other pay out schedule so long as their portion was distributed in cash and in full by the fifth anniversary as federal law requires.  In this case, Ms. Schmidt chose to defer her cash payment for five years, perhaps to delay tax consequences.  In short, the Beneficiaries' interpretation would unfairly restrict beneficiary options.  For all these reasons, the court rejects the Beneficiaries' argument that the contract required payment within thirty days of the deemed form election or proof of death date.

        2.        Because Ms. Adams deferred the Beneficiaries' election, Nationwide did not breach by failing to pay benefits on April 2, 2003.

Nationwide also contends that it did not breach on April 2, 2003.  Nationwide argues that its receipt of the March 3, 2003 election form was not effective because Morgan Stanley, and in particular Leslie Adams, acted as the Beneficiaries' agent and deferred their election. Nationwide further responds that it did not know that the Beneficiaries wanted payment until March 2005, when the Beneficiaries filed their Amended Complaint.  The Beneficiaries reply that Morgan Stanley was not their agent, but was Nationwide's agent, and acted without authority to defer the election.  They further reply that Nationwide had notice when they filed their initial Complaint.  The court first considers whether Morgan Stanley was either parties' agent, and if so, for what purposes.  The court then considers the notice question.

An agent cannot make its principal responsible for the agent's actions unless the agent is acting pursuant to either actual or apparent authority.[10]   Actual authority includes express and implied authority.[11]

The Beneficiaries contend that Morgan Stanley was Nationwide's general agent.  The court is satisfied, however, that while Morgan Stanley was Nationwide's agent in the sale of annuities, Morgan Stanley was not Nationwide's agent for adjustment or payment of benefits.  The agency agreement between Nationwide and Morgan Stanley expressly provides that Morgan Stanley is Nationwide's agent in the *sale* of annuity contracts.[12]   However, the agreement also provides that Morgan Stanley does not have authority to adjust or settle death benefit claims.[13]   Although the agreement provides that the parties have duties regarding customer complaints,[14] it does not provide that Morgan Stanley is Nationwide's agent in processing complaints.  Thus, while Morgan Stanley may have been Nationwide's agent in the sale of annuities, the court concludes that the agency agreement does not provide express authority to Morgan Stanley to process or pay death benefit claims.  The Beneficiaries do not contend that Morgan Stanley had implied or apparent authority to act on Nationwide's behalf.  The court therefore concludes that Morgan Stanley was not Nationwide's agent at least in processing or payment of claims.

---

[10] *See Zions First Nat'l Bank v. Clark Clinic Co.,* 762 P.2d 1090, 1094 (Utah 1988).

[11] *See id; Damon's Mo., Inc. v. Davis,* 590 N.E.2d 254, 257 (Ohio 1992).

[12] S*ee* General Agency Agreement at ¶3.

[13] *See id.* at ¶8.

[14] *See id.* at ¶13.

Nationwide maintains that Morgan Stanley was the Beneficiaries' agent in the processing and payment of claims.  It is well settled that an agent may perform duties for both parties to a transaction and thus may be considered an agent for both parties with respect particular services the agent performs.[15]  Morgan Stanley, therefore, may act as Nationwide's agent in the sale of annuities but the contract beneficiaries' agent in the payment of claims.  In this case, the record contains no evidence that Morgan Stanley had express or implied authority to act for the Beneficiaries.  At issue is then is whether the Morgan Stanley had apparent authority to so act.[16] The court is satisfied that the Beneficiaries cloaked Morgan Stanley with apparent authority to defer payment of their benefits.  The Beneficiaries completed the Nationwide election form and then sent the form through their agent, Ms. Fuller, to Morgan Stanley, admittedly *expecting* to receive some amount from Morgan Stanley or other defendants.[17]  Thereafter, Ms. Quinn sent her February 2003 demand letter referencing the Best of America contract to Morgan Stanley. Accordingly, the court concludes that the Beneficiaries vested Morgan Stanley with apparent authority to proceed on their behalf in securing payment of benefits.

The Beneficiaries contend that in her deposition, Ms. Adams testified that she had no authority to tell Nationwide to defer payment of benefits.  But the Beneficiaries identify no record evidence that either Morgan Stanley or Ms. Adams indicated to Nationwide that they did not have authority to act on the Beneficiaries' behalf.   Rather, when Nationwide asked Ms.

---

[15] *See, e.g., Utah State Univ. v. Sutro & Co*, 646 P.2d 715, 722 (Utah 1982).

[16] *See Zions First Nat'l Bank,* 762 P.2d at 1095 (noting apparent authority exists only where the principal causes a third party to believe that agent has authority to act on the principal's behalf).

[17] *See* Am. Compl. ¶¶ 35-36.

Adams if she wanted Nationwide to move the funds (apparently to a money market account) or pay the funds, Ms. Adams said no.  She needed to speak with her "June 1, 2007 individual people."[18]  In her deposition, Ms. Adams also indicates that the Nationwide contract precluded her from deferring payment.  But the Beneficiaries have not identified for the court the provision that precludes Ms. Adams from acting as their agent in seeking payment of benefits and to which Ms. Adams' deposition testimony refers.  Thus, the court concludes that Ms. Adams' testimony does not create a material issue of fact as to whether the Beneficiaries vested Morgan Stanley with apparent authority to proceed on their behalf in deferring payment.

Finally, although the Beneficiaries maintain that Nationwide had notice that they wanted payment when they filed their initial Complaint, the Beneficiaries did not serve Nationwide until February 1, 2005.  Nationwide concedes that it had notice on March 24, 2005, when the Beneficiaries filed their Amended Complaint.  The Beneficiaries have not argued that the failure to pay the benefits prior to March 2005 is a material breach.  Even assuming, however, that there is an issue of material fact as to either the agency or the notice issue, the court is satisfied that the Beneficiaries cannot show damages.

B.     The Beneficiaries have not their Burden to Establish Damages.

Nationwide also contends that it is entitled to summary judgment on the contract claim because the Beneficiaries cannot show damages.  The Beneficiaries respond that by virtue of the breach alone they are entitled to (apparently nominal) damages, plus additional consequential damages.

---

[18]*See* Transcript of Tape Recorded Telephone Conversation Between Leslie Adams and Stephanie Mecham at 9-10.

Under Utah law an element of a breach of contract claim is damages.[19]  It is well settled that nominal damages are recoverable for breach of contract even if no actual damages are recoverable or if damages have not been proven.[20]  Utah case law, however, supports granting of summary judgment where only nominal damages are available to the plaintiff.[21]  Potential entitlement to nominal damages therefore does not preclude the court from granting summary judgment.

Nationwide contends that it has overpaid the Beneficiaries.  Nationwide calculated the Beneficiaries' share of the death benefits by making the following favorable assumptions: (1) Nationwide had received satisfactory proof of death within sixty days of Ms. Shropshire's death on February 1, 2002 (when in reality, they did not receive proof until June 2002); (2) by the sixtieth day, the Beneficiaries had notified Nationwide of their election of a lump sum payout (Nationwide contends that it did not receive notice until March 3, 2003 and even then Nationwide contends that the Beneficiaries' agent, Leslie Adams, instructed it defer payment); and (3) the Beneficiaries did not elect to defer payment despite its communications with Morgan Stanley.

Nationwide then applied the contract rider to value the benefits.  The rider provides:

> If the Annuitant dies at any time prior to the Annuitization Date, the dollar amount of the Death Benefit will be the greater of: (1) the Contract Account Value; (2) the sum of all Purchase Payments . . . ; (3) the greatest Contract Value on any Contract Anniversary Date prior to the deceased Annuitant's 86th birthday . . . or (4) the 5% Interest Anniversary Value.

---

[19] *See Blair*, 20 P.3d at 392.

[20] *See id.*

[21] *See Holmes Dev., LLC v. Cook*, 48 P.3d 895, 906 (Utah 2002) (declining to remand to lower court although plaintiff was entitled to recover nominal damages).

. . .

> The 5% Interest Anniversary Value is Equal to Purchase Payments minus amounts surrendered, accumulated at 5% compound interest until the last Contract Anniversary prior to the deceased Annuitant's 86th birthday.  Such total accumulated amount shall not exceed 200% of the net of Purchase Payments and amounts surrendered.  The adjustment for amounts subsequently surrendered after the most recent Contract Anniversary will reduce the 5% Interest Anniversary Value in the same proportion that the Contract Value was reduced on the date of the partial surrender.[22]

According to the undisputed testimony of Nationwide's Rule 30(b)(6) designated witness, the highest of the four valuations was rider alternative two – the sum of all purchase payments ($175,661.10).  Each of the Beneficiaries had a 16% share, thus their shares were valued at $28,105.78 each.  Based upon the assumption that the Beneficiaries had made their election on the last day of the 60 day period, Nationwide paid the Beneficiaries interest from that point at the Utah statutory rate of 10% until Nationwide began processing the benefit on March 24, 2005 ($8,370.14).  If the payment had been from March 3, 2003, Nationwide would have paid each $2,579.57 *less*.  The Beneficiaries do not dispute Nationwide's contention that the interest payment compensates for the time value of money.  Then, Nationwide paid the Beneficiaries the appreciation on the contract at the time of liquidation ($11,636.32 or $5,818.16 each).  In total, Nationwide paid each of the Beneficiaries $42,294.08.

The Beneficiaries nonetheless maintain they are entitled to loss of "peak value," which apparently is the death benefit (1) with all deductions disgorged, (2) contract enhancements or riders added, (3) interest during the breach, and (4) consequential damages.

---

[22]Nationwide Life Ins. Variable Annuity Contract Enhanced Death Benefit Rider at 1.

The Beneficiaries, however, have failed to show that the amount Nationwide paid them, making favorable assumptions and including interest, is less than the amounts they would receive with all deductions disgorged and contract riders added but without the favorable assumptions.  Additionally, in their opening memoranda and opposition, the Beneficiaries did not specifically identify let alone offer supporting evidence or legal authority for the recovery of consequential damages, in particular attorneys fees, based upon breach of an express contract. Only in their reply in support of their cross-motion for partial summary judgment do they for the first time seek attorney fees relying on Utah's insurance contract exception to the American Rule that each party pays its own fees.  By doing so, they effectively prevented Nationwide from responding.  Additionally, the Beneficiaries do not effectively explain why that exception applies here.

Moreover, the Beneficiaries have no expert testimony to support their damage claims. The deadline for expert designation and reports was August 12, 2006.  The court extended that deadline to November 22, 2006.  The day after that deadline expired, however, the Beneficiaries moved again to extend the deadline.  Before the court ruled on the second motion for an extension, on December 8, 2006, the Beneficiaries served a document captioned "Expert Designations and Reports."  That pleading identifies Stephen J. Nicolatus as an expert witness, but does not include any report.  Nationwide has moved to strike the document as untimely and prejudicial.

The Beneficiaries did not respond to the motion to strike.  The court could grant the motion to strike on that basis alone.  Additionally, during the summary judgment motion hearing, the Beneficiaries' counsel failed to explain why given the information that the

Beneficiaries had, he could not have timely submitted an expert report by Mr. Nicolatus.   In short, the Beneficiaries have presented no evidence to support an inference that they are entitled to any more damages for breach of contract than Nationwide has paid them.   Nationwide therefore is entitled to judgment as a matter of law on its breach of contract claim.

## II.   *Nationwide is Entitled to Summary Judgment on the Implied Covenant Claim.*

Nationwide contends that the Beneficiaries cannot show breach of the implied covenant of good faith and fair dealing or damages and therefore they cannot recover on this claim.   The Beneficiaries note that Nationwide had a separate duty to them under the implied covenant of good faith and fair dealing.   The Beneficiaries contend that by sending their claim to close after Ms. Adams indicated to Nationwide that she wanted to file a complaint was a violation of the implied terms.   They claim Nationwide should notified them that it was holding their money. However, as noted above, the Beneficiaries cloaked Morgan Stanley with authority to act on their behalf.   And although Ms. Adams indicated she intended to file a complaint, the Beneficiaries point to no record evidence that she did so.   In short, the failure to provide notice to the Beneficiaries after Ms. Adams' inquiry about filing a complaint to Nationwide does not establish a breach of the implied covenant.

Additionally, in February 2003, after Ms. Quinn had apparently signed the Nationwide election form, Ms. Quinn sent a letter to Morgan Stanley demanding payment and referring to the Nationwide "Best of America" contract.   Morgan Stanley responded that the Beneficiaries needed to work through the executor.   The Beneficiaries, however, point to no record evidence that they demanded payment from Nationwide thereafter although Ms. Quinn and Ms. Yoak signed the Nationwide election form.   Nationwide, however, points to filing of the Amended

Complaint – filed under two months after the initial Complaint was served on Nationwide – as its notice that the Beneficiaries were seeking an election.  Absent any other record evidence that the Beneficiaries made a demand for payment, the court concludes that Nationwide did not breach the covenant.

Additionally, although the Beneficiaries generally assert a claim for attorney fees, they do not assert that they can show any other consequential damages from any breach of the implied covenant (as opposed to breach of contract).  Accordingly, the court grants summary judgment to Nationwide on this claim.

### III.    *Nationwide is Entitled to Summary Judgment on the Conversion Claim.*

Utah law provides that "'[a] conversion is an act of willful interference with chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession.'"[23]  In addition, conversion will lie where the misappropriated funds were placed in custody of another for a specific purpose.[24]  In such a case, diversion for other than the specified purpose results in conversion.[25]  Nationwide contends that because Ms. Adams had apparent authority to defer payment of the benefits, it did not willfully interfere with the Beneficiaries' property and had legal justification for not making payment.  The court concluded above that the Beneficiaries cloaked Morgan Stanley with apparent authority to defer payment.

---

[23]*In re Ogden*, 314 F.3d 1190, 1200 (10th Cir. 2002) (alteration in original) (quoting *Allred v. Hinkley*, 8 Utah 2d 73, 328 P.2d 726, 728 (1958)).

[24]*See id.*

[25]*See id.*

Additionally, Nationwide contends that this matter is governed by contract, not tort law.[26] The Beneficiaries do not contend that their conversion claim is independent of their breach of contract claim.  Accordingly, the court grants Nationwide summary judgment on this claim.

**IV.   *Nationwide is Entitled to Summary Judgment on the Breach of Fiduciary Duty Claim.***

Under Utah law no fiduciary liability exists between an insured and insurer on a first party insurance contract claim.[27]  In this case, Nationwide argues that the Beneficiaries' death benefit claim is a first party insurance claim that sounds in contract, not in tort.  The Beneficiaries summarily assert without citing any evidentiary support or citing any legal authority that beneficiaries of variable annuities are in a special position of trust to the insurance company and broker and that trust law should apply from the date of Nationwide's breach. Absent legal or evidentiary support that Nationwide had a fiduciary duty to the  Beneficiaries, the court concludes that Nationwide is entitled to summary judgment on the breach of fiduciary duty claim.[28]

**V.   *Nationwide is Entitled to Summary Judgment on the Conspiracy Claim.***

To establish a conspiracy, a plaintiff must show: " (1) a combination of two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of

---

[26]*See Lee v. Thorpe*, 147 P.2d 443, 446 (Utah 2006) (agreeing with court of appeals that when conflict arises between parties to a contract regarding contract subject matter, the contractual relationship controls and the parties are not permitted to assert tort actions to circumvent their bargain).

[27] *See Black v. Allstate Ins. Co.,* 100 P.3d 1163, 1169 (Utah 2004).

[28]*See Bad Ass Coffee Co. of Haw. v. Bad Ass Coffee Ltd. P'ship*, 25 Fed. Appx. 738, 744 (10th Cir. 2001 (deeming issued waived where party fails to cite any case law or any Utah law).

action; (4) one or more unlawful, overt acts;" and (5) damages proximately caused thereby.[29] Nationwide contends that it is entitled to summary judgment because the Beneficiaries have not shown an unlawful act, meeting of the minds, or damages caused by the same.  The Beneficiaries respond only that they are entitled to a jury trial on their conspiracy claim and that Morgan Stanley sent a letter to Ms. Quinn that did not answer her request for information about the benefits.

The Beneficiaries point to no evidence from which the court can infer a meeting of the minds of Nationwide and Morgan Stanley.  Accordingly, the court grants summary judgment to Nationwide on the conspiracy claim.

## VI.  *The Beneficiaries Are Not Entitled to Partial Summary Judgment on their Breach of Contract Claim.*

In their motion for partial summary judgment, the Beneficiaries maintain that they performed the contract and Nationwide breached by not timely paying the correct amount of benefits.  The Beneficiaries also suggest that Nationwide may have underpaid other contract beneficiaries.  As discussed above, the court has concluded that the contract required the Beneficiaries to make an election and notify Nationwide of the same.  The Beneficiaries, however, did not perform their election obligation until at least March 3, 2003, when Morgan Stanley faxed the election form to Nationwide.  On March 10, 2003, Ms. Adams, acting as the Beneficiaries' agent deferred their election.  And the Beneficiaries cannot show damages from any breach.  Moreover, the other contract beneficiaries are not parties to this action and the court does not make any decision as to their rights.  Accordingly, the court denies the Beneficiaries' motion for partial summary judgment.

---

[29] *Alta Indus. Ltd. v. Hurst*, 846 P.2d 1282, 1290 n.7 (Utah 1993).

**VII.   *The Beneficiaries' Motion to Alter the Order Denying Class Certification is Moot.***

The Beneficiaries' motion to alter the order denying class certification is largely based upon their interpretation that Nationwide breached the variable annuity contract.  The court has rejected that interpretation.  And the court is satisfied that its earlier order denying certification is correct.  Accordingly, the court denies the motion.

**VIII.   *The Motion to Amend the Amended Complaint to add Ms. Fuller as Representative Plaintiff is Futile, Prejudicial, and Untimely.***

After oral argument on the summary judgment motions above, the Beneficiaries filed a motion to amend their Amended Complaint to add Ms. Fuller as a representative class plaintiff pursuant to Rule 15 of the Federal Rules of Civil Procedure.  They also filed a motion for summary judgment (the Third Motion for Summary Judgment) as to her claims.

Ms. Fuller seeks to add allegations that Nationwide underpaid her by $2,163 because it did not pay her "the guaranteed death benefit," the 5% Enhanced Death Benefit Rider, and withdrew certain account fees.  Nationwide responds that the motion to amend should be denied because the amendment would be futile, would unduly prejudice Nationwide, and is untimely.

District courts may deny a motion to amend upon a showing of undue delay, undue prejudice to the opposing party, failure to cure by amendments previously allowed, or futility of the amendment.[30]  The court agrees with Nationwide that denial is appropriate.  First, the court has denied the request for class certification.  Therefore, Ms. Fuller's desire to serve as a representative plaintiff is moot.  (To the extent Ms. Fuller may seek individual relief, her claims do not satisfy the diversity amount in controversy requirement.  Ms. Fuller, however, may very well seek relief in state court.)  Second, Nationwide has not had an opportunity to conduct

---

[30]*See, e.g., Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

discovery with regard to Ms. Fuller's claims and therefore Nationwide would be unduly prejudiced by the amendment.  Finally, no adequate explanation for filing the motion to amend on March 22, 2007 has been offered.  From the outset of this action, the Beneficiaries claimed that Nationwide improperly withdrew fees.[31]  Additionally, fact discovery closed on November 8, 2006.  At that point, the Beneficiaries had the Nationwide contract and should have been aware of rider claims.  In their summary judgment motion filed on January 22, 2007, the Beneficiaries relied upon the Zavorek deposition, taken October 31, 2006, to assert that the other contract beneficiaries lost money because Nationwide held their benefits.  The Beneficiaries' counsel does not adequately explain why he did not file their motion to amend at that time, if not earlier.  In short, the Beneficiaries' counsel should have been aware of Ms. Fuller's claims long before filing the present motion to amend.  Accordingly, the court denies the motion to amend. Consequently, the court denies the Third Motion for Summary Judgment.

## CONCLUSION

For the foregoing reasons, the court denies the Beneficiaries' motion for partial summary judgment (#201); grants Nationwide's motion for summary judgment (#193); grants Nationwide's motion to strike (#190); denies the Beneficiaries' motion for extension of time (#184); denies the motion to alter class certification order (#215), denies the motion to amend (#221), and denies the Third Motion for Summary Judgment (#225).  The court has already granted a motion to seal docket number 196 and the parties have stipulated to the dismissal of Morgan Stanley, the court therefore directs the court clerk to terminate the motion to seal (#207)

---

[31]*See, e.g.,* Am. Compl. at ¶93.

and Morgan Stanley's Motion for Summary Judgment (#198).  The court clerk is directed to

close this case.  DATED this 1st day of June, 2007.

       SO ORDERED.

BY THE COURT:

Paul G. Cassell
United States District Judge